# In the United States Court of Federal Claims

No. 12-22 C
(Filed: March 28, 2012)
(Released for Publication: April 2, 2012)[1]

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| | \* | |
| **THE ELECTRONIC ON-RAMP, INC.,** | \* | |
| | \* | |
| | \* | |
| Plaintiff, | \* | Pre-award bid protest; motion for judgment |
| | \* | on the administrative record; 5 U.S.C. § 706; |
| v. | \* | 28 U.S.C. § 1491; FAR § 15.208(b)(1)(ii); |
| | \* | FAR § 52.215-1; government control; |
| **THE UNITED STATES,** | \* | minor informality; late proposal rule; |
| | \* | injunctive relief |
| Defendant. | \* | |
| | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*William T. Welch*, McMahon, Welch & Learned LLP, Reston, VA, for Plaintiff.

*Alexander V. Sverdlov*, Trial Attorney, Civil Division, United States Department of Justice, Washington, DC, with whom were *Maj. Brent A. Cotton* and *Max D. Houtz*, Assistant General Counsel, Defense Intelligence Agency, Washington, DC, for Defendant.

---

## OPINION

---

**DAMICH**, Judge:

This is a pre-award bid protest brought by Plaintiff The Electronic On-Ramp, Inc. ("EOR"). The dispute centers on whether EOR timely submitted the proposal it had prepared in response to a solicitation issued by the Defense Intelligence Agency ("DIA"). The solicitation required each offeror to deliver an electronic copy of its proposal by email and a paper copy by hand-delivery. An hour before the submission deadline, EOR submitted its proposal to DIA via email and it dispatched a courier to hand-deliver the paper proposal to DIA's office, which is

---

[1] This opinion originally was issued under seal on March 28, 2012, pending a determination between the parties whether to propose redactions of competition-sensitive, proprietary, confidential, or otherwise protected information. The parties have advised the Court that they have no redactions to propose.

located on a military base.  EOR's courier arrived at the military base before the submission deadline, but the base's security officers would not permit him to enter.  EOR contacted the Contract Specialist, who told EOR that she would send someone to pick up the proposal.  Due to a miscommunication about where the courier was waiting, the courier did not turn over possession of the paper copy of the proposal to the Contracting Officer ("CO") until after the deadline passed.  Because she did not have the paper copy before the deadline, the CO rejected EOR's proposal as late.

EOR recognizes that deadlines in solicitations generally must be met.  Nevertheless, it relies on the "Government Control" exception in the Federal Acquisition Regulations ("FAR"), which provides that an otherwise late proposal may be considered if it was "received at the Government installation designated for receipt of proposals" and was "under the Government's control" prior to the submission deadline.  EOR also argues that, because DIA received a copy of the proposal via email before the submission deadline, DIA should have waived the late delivery of the paper copy of the proposal as a "minor informality."  Plaintiff requests the Court to reinstate its proposal for consideration for award.

In light of the exceptions provided by the FAR and the common law government misdirection exception recognized by the Court of Federal Claims ("CFC"), this Court agrees with EOR that DIA improperly rejected Plaintiff's proposal as late.  EOR properly and timely submitted a complete copy of its proposal via email.   The other copies of EOR's proposal arrived at the base prior to the submission deadline, but EOR's courier unexpectedly was unable to proceed past security.  Because DIA acknowledged that the courier was present at its facilities and it timely received the emailed proposal, EOR has established that its proposal was received and under government control and that DIA should have considered the proposal as timely submitted.  Even if the proposal was not under government control, the Court would find that the late delivery should have been waived as a minor informality because EOR did not gain a competitive advantage through late submission and no unfairness will result from consideration of the proposal.  In rejecting the proposal as late, the CO focused solely on the delivery of the paper copy and she failed to consider the other relevant facts.  Therefore, the Court finds that the CO's decision was contrary to law and EOR's protest is sustained.

## I.     Background

EOR is a Native American Indian, Service-Disabled Veteran Owned, and Certified Small Disadvantaged Business that provides a variety of products and services to the Department of Defense and uniformed military branches of the Government.

On July 12, 2011, DIA released the Request for Proposals ("RFP") for the Solutions for Intelligence Analysis II Procurement (SIA II "Procurement").[2]  After amending the RFP and including responses to questions, DIA issued the RFP for final release on September 3, 2011.  Administrative Record ("AR") 333, 409.  The Procurement was for a contractor to provide DIA missions with intelligence analysis support and related services.  It was an indefinite delivery/indefinite quantity ("IDIQ") contract that specified that DIA would order a minimum of

---

[2] RFP No. HHM402-11-R-0114.  The SIA II solicitation was a negotiated solicitation.

$3,000 of services and a maximum of $5.6 billion of services.  AR 172.  EOR was 1 of 30 contractors that prepared a proposal to submit in response to this RFP.  *See* AR 2123.

The RFP called for the delivery of proposals in several formats and through two delivery methods by September 12, 2011 at 11:00 a.m.  It required an electronic version to be delivered by email.  It also required both a paper version and another electronic version on compact disc ("CD") to be hand-delivered to the Defense Intelligence Analysis Center ("DIAC") on Joint Base Anacostia-Bolling ("JBAB" or "Base").[3]  The delivery location was specified as "Virginia Contracting Activity, Attn: Allison Richards/Jennifer Sylvestre, 200 MacDill Blvd, Bldg 6000, Bolling Air Force Base, Washington DC 20340-5100."  AR 383.  JBAB is a secure military facility, and entry to the base is restricted.  Persons holding a valid military ID, which is called a Controlled Access Card ("CAC"), may enter the Base.  "Non-CAC holders, visitors, guests, and vendors" may enter the Base, but they "require a sponsor for access onto the installation."  Def.'s Mot. J. AR at 4; *Visitor Information*, Joint Base Anacostia-Bolling, http://www.cnic.navy.mil/JBAB/InstallationGuide/VisitorInformation/index.htm (last visited Mar. 26, 2012).

The parties agree on the basic facts in this case.  On the morning of September 12, 2011, EOR attempted to deliver its proposal to DIA in accordance with the RFP.  At approximately 10:00 a.m., EOR sent, and DIA received, an electronic copy of EOR's proposal via email ("emailed proposal" or "emailed copy").  AR 2300.  At 10:09 a.m., EOR also emailed Jennifer Sylvestre, the Contracting Officer, and Allison Richards, the Contract Specialist, to let them[4] know that EOR had dispatched its courier with a hard copy and CD copy of the proposal.  AR 2203.

At 10:25 a.m., EOR's courier, retired USAF Staff Sargent David Hegarty, arrived at JBAB and was directed to the Air Force Visitor's Center.  At the Visitor's Center, Mr. Hegarty told the security officer that he was there to deliver EOR's proposal to the DIAC, identified the CO as his point of contact, showed a copy of the RFP, and presented an expired military ID.  *See* AR 2252.  The security officer told Mr. Hegarty that he could not enter unless someone from DIA gave him permission.  The security officer was unable to contact the CO, so he gave Mr. Hegarty a date and time stamped note indicating that Mr. Hegarty was present at the visitor's center at 10:45 a.m.  AR 2208-11.  Mr. Hegarty continued to wait at the Visitor's Center while representatives of EOR attempted to contact Ms. Sylvestre and Ms. Richards.

At 10:49 a.m., EOR sent an email to Ms. Sylvestre and Ms. Richards stating that EOR's courier was "at the Visitor's Center" and that the guards would not permit the courier "to enter the base" unless someone from the CO's office "will come and say that it is ok for [the courier] to go to [the DIAC]."  AR 2204.  At 10:56 a.m., EOR was able to reach Ms. Richards by phone.  EOR informed her that its courier was at the Visitor's Center and needed assistance.  Ms. Richards told EOR to have its courier continue waiting where he was until she could send

---

[3] Bolling Air Force Base recently was renamed to be Joint Base Anacostia-Bolling.  The RFP uses the old name, Bolling Air Force Base, as does Plaintiff in its briefs.

[4] The Court notes that both Ms. Sylvestre and Ms. Richards were designated as personal recipients of proposals in the RFP.

someone down to pick up the proposal, and she stated that she would be sending down a DIA representative to pick up the "stragglers." AR 2206. Apparently, there was a miscommunication between EOR and Ms. Richards. Ms. Richards understood "visitor's center" to mean the visitor's lobby of the DIAC building, as opposed to the Air Force Visitor's Center, located at the perimeter of the base. AR 2256, 2300. Ms. Richards sent someone to the DIAC lobby, but the person did not find EOR's courier there. AR 2300.

Meanwhile, Mr. Hegarty continued to wait at the Air Force Visitor's Center. At some point, Mr. Hegarty left the Visitor's Center and instead waited in the parking lot in his personal truck. At 12:04 p.m., EOR called Ms. Richards and told her that Mr. Hegarty still was waiting for someone to pick up the proposal. AR 2300. At 12:22 p.m., EOR sent an email with the same information. At around 12:30 p.m., DIA personnel were sent to the Air Force Visitor's Center to meet Mr. Hegarty. DIA personnel finally reached Mr. Hegarty at 12:55 p.m., nearly two hours after the proposals were due. At the time, Mr. Hegarty was waiting in his personal vehicle with the proposal. AR 2299.

On September 16, 2011, the CO informed EOR that its proposal was late and would not be considered for award because "a complete and responsive proposal was required to be delivered via e-mail [] and a hard copy delivered to the DIAC" and "[EOR's] hard copy proposal was not delivered to the DIAC . . . by 11:00 A.M. . . ." AR 2250. EOR's president exchanged several emails with the CO that described the events surrounding the delivery. AR 2256-67. He asked the CO to reconsider because the proposal was received at JBAB prior to the submission deadline. AR 2217, 2220. On September 21, 2011, the CO reaffirmed her original decision, but she also requested a copy of the ID that Mr. Hegarty used to access the base. AR 2256-63. EOR produced a copy Mr. Hegarty's CAC card, which showed that it had expired 7 months earlier. AR 2270. EOR also asserted that its proposal should have been accepted because it was received and under the government's control prior to the submission deadline. AR 2264. On September 27, 2011, the CO responded "The Government's decision of September 16th, 2011 still stands." AR 2271.

On October 7, 2011, Plaintiff filed a protest with the Government Accountability Office ("GAO"). On December 15, 2011, Plaintiff withdrew the GAO complaint. On January 11, 2012, Plaintiff filed a complaint with this Court and a Motion for a Preliminary Injunction. That same day, the Court held a status conference with the parties. The Government voluntarily agreed to hold off on considering the proposals until March 31, 2012, and the parties agreed to an expedited briefing schedule on the merits.

After the Government filed the administrative record, each party filed a motion for judgment on the administrative record. Briefing concluded on February 13, 2012.

## II.    Standard of Review

This Court's bid protest jurisdiction is provided by the Tucker Act. 28 U.S.C. § 1491(b) (2006). The Tucker Act provides that, in a bid protest action, courts review an agency's procurement actions under the standards set forth in the Administrative Procedures Act ("APA"), 5 U.S.C. § 706 (2006). 28 U.S.C. § 1491(b)(4); *see Impresa Construzioni Geom. Domenico*

*Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001).  Under the APA, the court determines, based on a review of the record, whether the agency's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

Under the APA standard adopted by the Federal Circuit, an agency's procurement decision may be set aside if (1) the decision lacked a rational basis or (2) the agency violated a procurement regulation or procedure.  *Impresa*, 238 F.3d at 1332-33.  When evaluating whether an agency's decision lacks a rational basis, the court must determine "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion."  *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (quoting *Impresa*, 238 F.3d at 1333).  When a protestor asserts that the procurement involved a violation of regulation or procedure, the agency's decision should be set aside if the protestor "show[s] a clear and prejudicial violation of applicable statutes or regulations."  *Impresa*, 238 F.3d at 1332-33 (quotation omitted).  A court should set aside an agency's decision if the agency "'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

If the court determines that the agency's action lacked a rational basis or was contrary to law, "then it proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct."  *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005).  To establish prejudice, in a pre-award bid protest, the protestor must demonstrate a "non-trivial competitive injury which can be addressed by judicial relief."  *Weeks Marine, Inc. v. United States,* 575 F.3d 1352, 1362 (Fed. Cir. 2009).

If a court determines that the plaintiff is prejudiced by the agency's action, the court then addresses whether injunctive relief is warranted.  For injunctive relief, in addition to determining the plaintiff's success on the merits, the court weighs the plaintiff's irreparable harm if the court withholds such relief, the balance of hardships to the respective parties, and the public interest in granting injunctive relief.  *Centech Group, Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009).

Where the parties have filed cross-motions for judgment on the administrative record, as here, Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC") provides a procedure for parties to seek the equivalent of an expedited trial on a "paper record, allowing fact-finding by the trial court."  *Bannum,* 404 F.3d at 1356.  Unlike summary judgment standards, genuine issues of material fact do not preclude a judgment on the administrative record.  *See id.* at 1355-56.  Questions of fact are resolved by reference to the administrative record.  *Id.* at 1356.

## III.   Discussion

Negotiated procurements, like the one at issue in this case, are governed by Part 15 of the FAR.  Under the FAR, a proposal received after the time set for receipt of proposals generally will be considered late and ineligible for an award (the "late proposal rule").  FAR § 15.208(b).  It is the offeror's responsibility to ensure that its proposal is properly delivered to "the Government office designated in the solicitation by the time specified in the solicitation."  FAR § 15.208(a).  The reason late proposals cannot be considered for an award is because "[t]here are inherent competitive advantages to submitting a proposal after all other parties are required to do so, such as access to post-deadline news and market information that could result in last minute changes to the proposal."  *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1381 (Fed. Cir. 2009).

Although submission deadlines typically are strictly enforced, the late proposal rule is not a draconian provision, and the FAR provides several explicit exceptions which permit consideration of an otherwise late proposal.  Under the Government Control exception, a "late" proposal may considered if "it is received before award is made, the contracting officer determines that accepting the late proposal would not unduly delay the acquisition; and . . . it was received at the Government installation designated for receipt of proposals and was under the Government's control prior to the time set for receipt of proposals."  § 15.208(b)(1).[5]  Similarly, while offerors generally must comply with all the requirements set forth in the solicitation, the FAR permits "[t]he Government [to] waive informalities and minor irregularities in proposals received."  FAR § 52.215-1(f)(3).

EOR advances two basic arguments for why DIA should consider its proposal for an award.  EOR argues that its proposal was timely submitted because the proposal was received at the JBAB and was under the government's control prior to the submission deadline.  EOR also argues that, because DIA received an electronic copy of the proposal via email before the submission deadline, DIA should have waived the late delivery of the paper copy of the proposal as a "minor informality."

## A.     The Emailed Copy of EOR's Proposal

The prior timely submission of the emailed copy of its proposal plays a major role in EOR's argument.  The Government minimizes the importance of this copy because it is not identical to the paper copy and the RFP specifically provides that the paper copy will control if there are any differences.  Def.'s Mot. J. AR at 24.  Therefore, as a threshold matter, the Court addresses the impact on EOR's argument of the Government's contention that the paper copy of the proposal is not identical to the emailed copy.

It is the offeror's responsibility to ensure that its proposal is responsive to and compliant

---

[5] The FAR provides 3 other exceptions that permit consideration of an otherwise late proposal, which are: (1) an electronic proposal was transmitted and received "not later than 5:00 p.m. one working day prior to the date specified for receipt of proposals" (FAR § 15.208(b)(1)(i)); (2) "it was the only proposal received" (FAR § 15.208(b)(1)(iii)); (3) "an emergency or unanticipated event interrupts normal Government processes so that proposals cannot be received at the Government office designated for receipt of proposals by the exact time specified in the solicitation" (FAR § 15.208(d)).

with the terms of the solicitation.  In this case, DIA's RFP specified the format and transmission methods for proposals.  DIA required each offeror to divide its proposal into 6 different volumes, and for all 6 volumes, DIA required each offeror to submit "1 Original – Written Version[;] 1 Original – Electronic Version (E-mail)."  AR 383.  For 5 of the volumes, it also required submission of "1 Original – Electronic Version (CD ROM)[;] 4 copies – Written version."  AR 383.  To resolve any discrepancies between the different versions of the proposals, DIA provided that "In the case of a conflict between the electronic and hard copy, the hard copy will be considered the correct version."  AR 382.  DIA required each offeror to submit its proposal by hand-delivering the paper version, paper copies, and CD version to the DIAC and by emailing an electronic version to the CO's and the Contract Specialist's email addresses.  AR 383.

Pursuant to the terms of the RFP, EOR submitted its proposal by email and it also submitted paper and CD copies by hand-delivery.  Because the RFP expressly provided for resolution of conflicts between electronic and paper versions, the submission of differing electronic and paper versions, by itself, cannot be disqualifying.  Therefore, by submitting non-identical copies of its proposal, EOR did not violate any terms of the RFP.  Furthermore, an inspection of the two copies shows that the differences arose because EOR made modifications to the emailed copy of the proposal after it had printed the paper copy.  In modifying the emailed copy, EOR acted in good faith because it submitted the emailed copy before the submission deadline.

The main difference between the emailed proposal and the paper proposal is that, in the emailed proposal, EOR corrected some typographical errors, made some small adjustments to the formatting, rearranged a few pages, and added in a few pages of information.  For example, extra words were removed from headings, AR 762-63, 1558-59 (in a section about subcontractor USGC, the paper copy heading was "USGC Participation" and the emailed copy heading was "Small Business Participation"), paragraph headings were added, AR 754-55, 1570-71, missing contact information was added, AR 639, 1441-42, "168,000,000,000" was changed to "168,000,000", AR 763, 1559, and "$5.600,000,000" was changed to "$5.6 Billion" in several places, AR 747, 1547, AR 750, 1550, AR 762-63, 1558-59.  The most significant change appears to be that several pages that appear in the emailed proposal were left out of the paper proposal (emailed proposal is 773 pages, hard copy is 763).  These additional pages do not change the terms of the proposal, but rather add a few pieces of information to several larger sections.  Compare AR 1434-90 (paper proposal lists description of past performance under 8 different contracts) with AR 688-92 (emailed proposal adds past performance for a 9th contract); compare AR 1541-65 (paper proposal describes 5 of 6 subcontractors as small businesses) with AR 756 (emailed proposal describes all a 6 as small businesses); compare AR 1566-79 (at the end of the small business section, paper proposal contains profiles for 7 team members) with AR 752-77 (emailed proposal has profiles for 5 team members and profiles appear scattered throughout the section).

The comparison of the two proposals shows that EOR was not adjusting the terms of its paper proposal based on new information or changing market conditions and that it did not make any changes to the paper proposal after it submitted a copy of its proposal via email.  Instead, the record shows that EOR made modifications to its emailed proposal and it did not attempt to update the paper proposal to reflect the changes.  The Court finds that in submitting different

versions of its proposal, EOR acted in accordance with the terms of the RFP.  It also finds that EOR timely submitted its proposal by email.  The Court now turns to EOR's delivery of the paper and CD copies of its proposal.

**B.      Was EOR's Paper Proposal Late or Does it Qualify for an Exception to the General Rule?**

As a general rule, it is the offeror's responsibility to submit its proposal so as to reach the "the Government office designated in the solicitation by the time specified in the solicitation." FAR § 15.208(a).  Any proposal that is "received at the designated Government office after the exact time specified for receipt of proposals is 'late' and will not be considered . . . ."  FAR § 15.208(b).  The FAR provides that an offeror may submit a proposal "us[ing] any transmission method authorized by the solicitation (i.e., regular mail, electronic commerce, or facsimile). . . ." FAR § 15.208(a).

In this case, EOR timely submitted a complete copy of its proposal via email, as required by the RFP.  The issue is whether EOR timely submitted the paper and CD copies of its proposal. EOR concedes that its paper proposal did not reach the DIAC building, which is the government office designated for delivery in the RFP, until after the submission deadline.  Pl.'s Mot. J. AR at 5.  EOR asserts, however, that it qualifies for the Government Control exception, which essentially provides that a "late" proposal may be considered if "it was received at the Government installation designated for receipt of proposals and was under the Government's control prior to the time set for receipt of proposals."  FAR § 15.208(b)(1)(ii).  EOR asserts, and the Government does not dispute, that JBAB is the relevant government installation.[6]  In support of its argument that the exception applies, EOR points to several facts: its emailed proposal was submitted prior to the deadline, the security officer's time-stamped note proves EOR's courier was at JBAB prior to the deadline, and its proposal was under DIA's control prior to the deadline because Ms. Richards stated she would send someone to meet the courier.  Pl.'s Mot. J. AR at 1, 3-4.

The Government argues that a proposal is not under government control until the offeror relinquishes control over the proposal by permanently transferring control to the government. The Government argues that while EOR's courier may have been at the Base's Visitor's Center prior to the submission deadline, he did not relinquish control of the proposal to the Government until after the deadline had passed.  The Government cites to several CFC and GAO decisions that it contends support its interpretation of government control.[7]

---

[6] FAR § 15.208 does not explicitly define the terms "designated office" and "government installation."  Other CFC judges that have considered the terms have found that "designated office" means the particular location designated for the receipt of bids in the solicitation and "government installation" means the entire government facility in which the "designated office" is located.  *Shirlington Limousine & Trans., Inc. v. United States*, 77 Fed. Cl. 157, 172 (2007); *see Cal. Marine Cleaning v. United States*, 42 Fed. Cl. 281, 298 (1998) (interpreting a different, but identically worded, FAR provision).  The Court agrees with these definitions and adopts them.

[7] These decisions are discussed, *infra*.

To determine whether the Government Control exception applies, the Court first looks to the plain language of the regulation.  *Lockheed Corp. v. Widnall*, 113 F.3d 1225, 1227 (Fed. Cir. 1997) (stating that "to interpret a regulation we must look at its plain language and consider the terms in accordance with their common meaning").  The exception applies if a proposal (1) "is received before award is made," (2) "the contracting officer determines that accepting the late proposal would not unduly delay the acquisition[,]" (3) "it was received at the Government installation designated for receipt of proposals," and (4) "was under the Government's control prior to the time set for receipt of proposals."  § 15.208(b)(1).  It is undisputed that DIA received EOR's proposal before an award was made.  The CO did not consider the delay issue because she concluded on other grounds that the proposal was late.  However, the Contract Specialist was willing to send someone to pick up the "stragglers," indicating that a brief delay would not be problematic for DIA.  The Court observes that DIA received 28 other proposals,[8] which would take a significant amount of time to evaluate.  The Court finds that the short delay in receiving EOR's proposal would not have unduly delayed the acquisition.

There is no question that EOR's emailed proposal was submitted prior to the deadline.  The issues here are whether prior to the deadline EOR's paper proposal was "received at the Government installation" and was "under the Government's control."

### 1.     EOR's Paper Proposal Was Received at the Government Installation Designated for Receipt Prior to the Deadline.

Although the FAR does not specifically define what it means for a proposal to have been "received at the Government installation," because it distinguishes between "received" and "control," it follows that a proposal may be "received" without being under government "control."[9]  The FAR also specifies the type of evidence that can be sufficient to prove when a proposal has been received: "[a]cceptable evidence to establish the time of receipt at the Government installation includes the time/date stamp of that installation on the proposal wrapper, other documentary evidence of receipt maintained by the installation, or oral testimony or statements of Government personnel."  FAR § 15.208(c).  The acceptable evidence provision indicates that a proposal can be considered received at the government installation in several different circumstances; a proposal could be received if a government agent stamps the proposal, if a courier and the proposal are logged-in at the installation, or if a courier is given permission by a guard or front desk to enter the installation to deliver the proposal.[10]

The Court concludes that a proposal can be received at the government installation when an offeror's courier logs in with a security guard or front desk and proffers the proposal for

---

[8] Although 30 offerors prepared proposals, DIA concluded that 2 proposals, including EOR's, were submitted untimely.

[9] Although some CFC judges have found that a proposal is not received at the government installation until the offeror permanently transfers control of the proposal to the government, *see Castle-Rose v. United States*, 99 Fed. Cl. 517, 527 (2011), that interpretation conflates the two prongs of the exception and effectively reads the phrase "under the Government's control" out of the regulation.

[10] This is a hypothetical and non-exclusive list.

delivery.  This interpretation is consistent with the ordinary definition of the word "receive," which can mean both "to take possession or delivery of" and "to admit or accept in some character or capacity," among other definitions.  Webster's Third New Int'l Dictionary 1894 (3d ed. 2002).  In reaching this conclusion, the Court recognizes that determining when a proposal is received is a fact specific inquiry that depends on the instructions contained in the solicitation and the nature of the agency's facilities.

In this case, it is uncontested that EOR's courier and its paper proposal were present at the Base's Visitor's Center prior to the submission deadline.  EOR's courier identified himself to the security guard and stated that he was there to deliver the proposal.  The security guard gave the courier a note documenting his presence before the submission deadline.  The courier anticipated receiving permission to enter the Base and he waited while the guard made several phone calls to the CO's office in an attempt to notify the CO that the courier was there.  Although the guard was unable to contact the CO, an EOR officer spoke with Ms. Richards, the Contract Specialist, several minutes before the submission deadline.  Ms. Richards acknowledged that EOR's proposal was at the JBAB, although there was some confusion as to exactly where the courier was, and she said that she would send someone to meet him.  AR 2300.  The Court finds that the evidence establishes that EOR's proposal was received at the government installation prior to the submission deadline.  Although EOR's paper proposal was received prior to the submission deadline, it will not qualify for the exception unless it also was "under the Government's control."

## 2. EOR's Paper Proposal Was Under the Government's Control Prior to the Deadline.

The FAR does not provide any guidance as to what it means for a proposal to be "under the Government's control."  In the absence of regulatory guidance, the Court relies on the underlying principles of the late proposal rule, which are fairness and the preservation of competition.  *See Labatt Food Serv.*, 577 F.3d at 1381.  An offeror should not receive an advantage by late submission, such as by having access to post-deadline information or having more time to prepare its proposal.  *Id.*  And similarly, an offeror should not be put at a disadvantage because it timely submitted a proposal.  Further, the late proposal rule should be simple and easy to apply to promote uniform application and avoid confusion.  The purpose of the lateness rule is to "'alleviate[] confusion, ensure[] equal treatment of all offerors, and prevent[] one offeror from obtaining [the] competitive advantage that may accrue'" from the late submission of an offer.  *Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 173 (2005) (quoting *PMTech, Inc.*, B-291082, 2002 CPD ¶ 172, at 2 (Comp. Gen. Oct. 11, 2002)); *see* Pl.'s Mot. J. AR at 5.

Extra time to submit a proposal is seen as an inherent benefit to an offeror.  *Orion Tech., Inc. v. United States*, -- Fed. Cl. --, 2011 WL 6370029, *13 (Fed. Cl. Dec. 1, 2011) (stating that "had the Army accepted plaintiff's late submissions, the Army would have given plaintiff an unfair competitive advantage by bestowing a benefit—additional time to submit a complete proposal—exclusively on plaintiff").  Offerors often value those last few hours, or even minutes, in working on their proposals.  As the Government's reply explains, "an offeror who delivers its hard-copy proposal late . . . has more time to prepare its final offer than the other offerors."

Def.'s Reply at 7. EOR, no doubt, would have valued additional time to complete its proposal as EOR's president states in an email that some of its personnel was "working all day and night before the proposal submission." AR 2212.

The FAR recognizes, however, that in certain situations, late submission neither benefits the offeror nor prejudices other offerors, and it provides for several explicit exceptions to the late rule. In addition, consistent with the purpose of the late proposal rule, both the CFC and GAO have recognized a "common law" exception to the rule. A late proposal may be considered if "government misdirection or mishandling" was the "paramount cause" of the delay and consideration of the proposal would not compromise the competitive process. *E.g.*, *Hosp. Klean of Texas, Inc. v. United States*, 65 Fed. Cl. 618 (2005); *ALJUCAR, LLC*, B-401148, 2009 CPD ¶ 124 (Comp. Gen. June 8, 2009); *see generally* Cibinic, Nash & Yukins, Formation of Government Contracts, at 764-66 (4th ed. 2011). In sum, the law reflects that in some circumstances it is more faithful to the preservation of competition to consider a late proposal than it is to reject it.

Consistent with the purpose of the late proposal rule, the Court concludes that a proposal is under the government's control when the offeror relinquishes control over the proposal such that it no longer can modify the proposal. Stated otherwise, a proposal is under government control if the government has sufficient control over the proposal that it can prevent post-deadline modifications. When an offeror permanently transfers physical possession of a proposal to the government, there is little question that the proposal is under the government's control. The Courts finds, however, that when an offeror timely submits one complete proposal in accordance with the terms of the RFP but retains physical possession of another copy of the proposal, the proposal can be under the government's control. The timely delivered copy can ensure that the offeror does not take advantage of any post-deadline information and does not take extra time to complete its proposal. Where the government already has one complete copy of a proposal, if the offeror modified the other copies, that modification would appear from a comparison of the two proposals.

As previously mentioned, the Government argues that the agency must have physical possession of a proposal before the proposal is under its control. The Government cites to several decisions that it claims are analogous to this case. At the outset, the Court notes that the cases the Government cites are both non-binding and not quite on point. Specifically, unlike in this case, the offerors in the cited cases did not timely submit a copy of their proposals via another transmission method.

The Government argues that in *Castle-Rose v. United States*, 99 Fed. Cl. 517, 526-27 (2011), the CFC stated that a proposal is not under the government's control until the offeror permanently transfers possession of the proposal to the government. Although the case does have language to that effect, that language appears to be dicta. The main issue in the case was the failure of the plaintiff to prove that its courier arrived in the lobby of the building designated for delivery prior to the deadline. The CFC found that "Notwithstanding whether the courier had to physically turn over [the] proposal to the government by [the deadline] or merely reach the lobby [], Castle-Rose has failed to establish the single fact crucial to its success in this case—that

its courier arrived in the lobby on time." *Id.* at 525.  Altogether missing from the case was the fact of a timely prior electronic submission of a proposal provided for by the RFP.

In *ALJUCAR*, the GAO determined that a proposal properly was rejected as late.  In that case, the offeror's agent's arrived at the security gate several minutes before the submission deadline but was not permitted to enter.  B-401148.  The offeror then contacted the contracting officer, who then sent someone to retrieve the proposal.  The agency picked up the proposal from the offeror at the gate, but not until the deadline already had passed.  The GAO found that the proposal was late because the RFP stated that "the offeror should anticipate it taking up to an hour to complete the required security screening for proposal submissions, [but] the protester [] arrived on the base only 8 minutes before closing." *Id.* at *2.  In this case, DIA's RFP contained no instructions warning of delay and EOR arrived on the base 35 minutes before closing.  More important, there is not mention of a timely prior electronic submission provided for by the RFP.

The government also cites to *Immediate Systems Resources, Inc.*, B-292856, 2003 CPD ¶ 227 (Comp. Gen. Dec. 9, 2003).  That case involves the submission of a best and final offer ("BAFO"), where the offeror had already submitted an initial proposal.  Several minutes before the submission deadline, the offeror's president arrived at the installation's security guard station and had the security guard log-in and date-stamp the BAFO.  The offeror then took back the proposal and proceeded to deliver it to the contract specialist, but it was delivered 14 minutes after the deadline.  The GAO found that, even if the BAFO was properly logged in by the security guard prior to the deadline, the proposal was late because "[the offeror's] president retained control of the proposal after the guard signed for the package, because the president (not the guard) delivered the proposal to the contracting specialist [in the building]." *Id.* at *3.  But, the contracting officer did not disqualify the offeror from competition, and instead considered the timely received initial offer as the offeror's BAFO.  *Id.*

Finally, the Government asserts that *U.S. Aerospace, Inc.*, B-403464, 2010 CPD ¶ 225, at *8 (Comp. Gen. Oct. 6, 2010), shows that government control requires physical possession.  In that case, the GAO did indeed find that a proposal was not under government control until the offeror relinquished custody of the proposal, but, significantly, it noted that the physical control requirement was "an obvious necessity in order to preclude any potential that an offeror could alter, revise, or otherwise modify its proposal after other offerors' competing proposals have been submitted." *Id.*

The cases cited by the Government do not require this Court to ignore the purpose of the government control requirement and to adhere woodenly to a physical possession test, especially in the circumstances of this case where there is a timely prior electronic version of the proposal, as provided for in the RFP.  The Court concludes that the proper focus of its inquiry, then, is whether the government has control over the proposal such that the offeror has no ability to modify the proposal and not merely whether the offeror retains physical possession of the proposal.

In this case, the Court finds that EOR's paper proposal was under government control.  Although EOR's courier retained physical possession and control over EOR's paper proposal, EOR already had submitted a complete copy of its proposal electronically.  The submission of

the proposal by email was not only an authorized method of submission, it was a required method.  Because the CO had a complete version of the proposal, any post-deadline changes to the paper proposal would be readily detectible, and therefore, DIA had the ability to prevent EOR from modifying the paper proposal.  While the proposals are not identical, as discussed above, the differences arose because EOR made clerical adjustments to the emailed copy of its proposal after it printed the paper proposal and not because EOR was making last-minute or post-deadline adjustments to the terms of its paper proposal.  Therefore, this is not a case where "the offeror is merely present at the facility before the deadline expires but still has the ability to manipulate the proposal . . . ."  Def.'s Reply at 5.

Additionally, not only was EOR's courier present at the facility, but prior to the submission deadline the Contract Specialist instructed the courier to wait where he was while she sent someone to pick up the proposal.  There was a miscommunication, however, and a DIA representative was sent to the wrong place.  Meanwhile, EOR was under the impression that a DIA representative was on her way.  EOR's courier had possession of the paper copy of the proposal, but he was expecting to hand it over to the DIA's agent as soon as the agent arrived.  Given that DIA had the emailed copy of the proposal and the courier was expecting a DIA representative at any minute, it would be difficult to believe that EOR was frantically making last-minute adjustments to its proposal.  To its credit, EOR was respectful of the fact that the CO had many other things going on, and it waited patiently for the DIA's agent to pick up the proposal.  After waiting for a little over an hour, EOR followed up with Ms. Richards.  At that point, Ms. Richards dispatched someone to the correct location on the installation to pick up the paper copy of the proposal from EOR's courier.

Furthermore, consideration of EOR's proposal is consistent with the principles of fairness and the preservation of competition.  Because EOR's proposal was received at the government installation before the submission deadline, this is not a case where an offeror obtained a competitive advantage by taking more time to complete its proposal than other offerors.  EOR's courier arrived at the security gate 35 minutes prior to the submission deadline and prior to the submission deadline Ms. Richards acknowledged his presence.  The courier had the proposal, the RFP, and the contracting officer's contact information, and he expected that those documents would be sufficient to gain entry.  Even the CO thought that the RFP should have been sufficient for EOR's courier to gain access.  AR 2256 (in an email to EOR's president, the CO stated that "a printed document that showed the office location, point-of-contact person, and phone number (such as the RFP) would have been sufficient to gain access to the JBAB installation").[11]  The security officer tried to contact the CO but could not because the CO was, quite reasonably, busy accepting and processing proposals from other offerors.  Unfortunately, EOR's courier was unable to enter.

The Government argues that the timely submission of the emailed proposal is irrelevant because the RFP provides that, in the case of inconsistencies, the hard copy will control and the

---

[11] As a contractor with experience with the DIA, EOR should have taken more precautions to ensure it could have accessed the base.  EOR should not have entrusted its proposal for "a $5.6 billion IDIQ contract to Mr. Hegarty, whose military ID had [] been expired for seven months, and made no arrangements to ensure he would be able to enter the base."  Def.'s Mot. J. AR at 17.

two proposals are not identical.  However, as discussed above, the differences did not occur because EOR was making post-deadline changes to its paper proposal but rather because EOR made changes to the emailed proposal prior to the submission deadline but after it had printed its paper proposal.  The RFP did not prohibit making such changes, and all other offerors could have done the same.  Had EOR made any material changes to its paper proposal, those changes would be clear based on a comparison to the emailed proposal.

The Government also contends that the agency should not have to compare the paper proposal to the emailed proposal to determine whether there are differences or whether EOR made changes to its paper proposal.  It argues that the only way to determine whether the proposals are the same is to compare them line by line, which is a labor intensive effort.  The Government argues that agency need not make such a comparison for the timely submitted proposals.  Def.'s Mot. J. AR at 27.

The Court does not sympathize with the agency.  Agencies have a fair amount of discretion in determining the procedures for submission of proposals and DIA exercised that discretion here.  DIA chose to require submission of proposals in three different formats: an electronic version via email, an electronic version via compact disc, and a paper version plus four copies.  DIA also chose to provide that "In the case of a conflict between the electronic and the hard copy, the hard copy will be considered the correct version," instead of requiring offerors to certify that the various versions of the proposals were identical.  Where an agency chooses to include redundant submission procedures in its solicitation, it cannot reasonably complain that checking compliance with those procedures is burdensome.  The solicitation put no restrictions on submitting non-identical versions of the proposals and EOR should not be punished for acting pursuant to the terms of the RFP.

When all the circumstances of this case are considered, the Court finds that EOR's proposal should not be rejected as late because EOR's proposal was "received" and "under the Government's control" prior to the submission deadline.  The administrative record shows that the CO rejected EOR's proposal as untimely because "a complete and responsive proposal was required to be delivered via e-mail [] and a hard copy delivery to the DIAC" and "[EOR's] hard copy proposal was not delivered to the DIAC . . . by 11:00 A.M. . . ."  AR 2250.  EOR's president asked the CO to reconsider, citing the Government Control exception, the Contract Specialist's instructions for the courier to wait-in-place, and the fact that its paper proposal was the same as the submitted emailed proposal.  AR 2252.  The CO still found that the proposal was late.  AR 2271.  The record shows that the CO's decision was based solely on the delivery of the hard copy and she did not give proper consideration to the timely received emailed copy, her office's instructions to EOR, nor the Government Control exception.  Therefore, the Court finds that that the CO did not consider important aspects of the problem and her decision to reject the proposal as late was arbitrary, capricious, or an abuse of discretion.

C.      **Because EOR Timely Submitted a Version of Its Proposal Via Email, DIA Should Have Waived the Late Delivery of the Paper Copy as a Minor Informality.**

Even if EOR's proposal was not under government control, the minor informality rule provides an independent basis for concluding that EOR's proposal must be considered.

EOR argues that the RFP authorized submission of proposals via email and DIA timely received an original copy of EOR's proposal via an accepted delivery method.  EOR asserts that because it timely submitted a complete copy of the proposal, the late delivery of the other originals and copies should have been waived as a "minor informality."  Pl.'s Mot. J. AR at 7.  It also argues that if some of the differences between the copies of its proposal are material, DIA should have treated the timely submitted emailed proposal as the "correct version" or official copy.

The Government argues that, because the solicitation provides that the paper proposal will control if there are any inconsistencies between the versions, the untimely delivery of the paper proposal disqualifies EOR from consideration for an award.  Where the controlling copy differs from the other copies, "the agency should not be required to perform the extra work of determining which differences are material for the purpose of establishing whether the timeliness provision can be waived."  Def.'s Mot. J. AR at 15.  Therefore, the Government argues, the minor informality provision does not apply.

The FAR provides that an offeror may submit a proposal "us[ing] any transmission method authorized by the solicitation (i.e., regular mail, electronic commerce, or facsimile). . . ."  FAR § 15.208(a).  The FAR does not specify whether an offeror must submit every copy of a proposal or whether partial submission of a proposal is sufficient.  DIA's solicitation incorporates FAR § 52.215-1 "Instructions to Offerors--Competitive Acquisitions," which provides guidance as to when an offeror should be disqualified for failure to comply with the terms of the solicitation.  AR 2, 234.  FAR § 52.215-1(f)(3) explains that, even if a proposal does not adhere to the exact terms of the solicitation, "[t]he Government may waive informalities and minor irregularities in proposals received."

Part 15 of the FAR does not provide any clarification on what types of "informalities" or "irregularities" can be waived.  In interpreting ambiguous provisions in Part 15 of the FAR, the Federal Circuit has used similar provisions in Part 14, which governs sealed-bid procurement, to inform its interpretation of the ambiguous provision.  *Centech*, 554 F.3d at 1038 (using FAR § 14.405 in a negotiated procurement to determine whether a requirement was a material term of an RFP).  FAR § 14.405 contains language similar to FAR § 52.215-1.  FAR § 14.405 provides that "A *minor informality or irregularity* is one that is merely a matter of form and not of substance.  It also pertains to some immaterial defect in a bid . . . that can be corrected or *waived* without being prejudicial to other bidders."  (emphasis added.)  FAR § 14.405 goes on to provide some examples of minor informalities or irregularities, "includ[ing] failure of a bidder to . . . return the number of copies of signed bids required by the invitation . . . ."  The provision further provides that a defect is "immaterial when the effect on price, quantity, quality, or delivery is negligible in contrast to the . . . scope of [the solicitation]."  *Id.*; *see Centech*, 554 F.3d at 1038 (relying on FAR § 14.405 to find that compliance with a term of the solicitation was material because it affected cost evaluation).

Based on the regulations, the Court concludes that the timely submission of one complete

15

copy of a proposal via an accepted transmission method can satisfy the requirement for timely delivery.  The failure of an offeror to submit the correct number of copies of a proposal is a minor informality, which can be waived or corrected but only if it would not be prejudicial to other offerors.  To determine whether permitting an offeror to submit copies of a proposal after the submission deadline would be prejudicial, the Court looks to the late proposal rule.  As discussed above, the underlying principles of the late proposal rule are fairness and the preservation of competition.  The timely submission of a complete copy of a proposal in accordance with the terms of the RFP can ensure that the offeror does not take advantage of any post-deadline information.  However, before the agency may consider the proposal, the agency must look at the facts and determine that the offeror did not gain any other advantage, such as having more time to complete its proposal.  If the agency determines that waiving the failure to comply with the terms of the solicitation would neither provide the offeror with a competitive advantage nor prejudice any competing offeror, the agency should waive the late delivery of the copies as a minor informality or irregularity.

The Court observes that, in applying the minor informality rule to the late delivery of copies of a proposal, the GAO[12] also has relied on the purpose of the late proposal rule.  For example, in *Tishman Constr. Corp.*, B-292097 (Comp. Gen. May 29, 2003), the GAO found that a bid should not have been rejected as late when the offeror submitted the electronic copy of the proposal on time but submitted the paper copy 73 minutes late.  Like DIA's solicitation in this case, the *Tishman* RFP incorporated FAR § 52.215-1.  The RFP required each offeror to submit both a paper proposal and an electronic proposal, but the RFP stated that the "paper copy is the official copy for recording timely receipt of proposals."  *Tishman*, at *1.  The GAO found that the timely submission of the electronic copy, which was identical to the paper copy, was sufficient to satisfy the timeliness requirement.  The GAO stated, "Given that [the agency] has received, by means specifically authorized by the RFP, a complete copy of Tishman's proposal prior to the time set for receipt of proposals, we fail to see how the late proposal rule or policy would be violated by consideration of Tishman's proposal."

In another case, *Abt Associates*, the GAO found that the "timely submission of a complete proposal to one of the specified locations" could "legally represent the submission of an offer to the government that could be evaluated . . . ."  66 Comp. Gen. 460, at 462 (1987).  In that case, the solicitation required offerors to submit proposals to two different offices of the Agency for International Development located in two different African countries.  *Id.*  Although the offeror's proposal arrived at one office by the deadline, its identical proposal sent to the other office arrived five days late.  *Id.*  The GAO concluded that, because the offeror had timely submitted a complete and identical proposal to one office, the offeror gained no advantage in preparation time and there was no possibility that it could have taken advantage of changed circumstances or new information.  *Id.*  The GAO found that no harm to the competitive system would result from consideration of the proposal and the late delivery should have been waived as a minor informality.  *Id.*

---

[12] Although GAO decisions are not binding authority, the Federal Circuit recognizes that "the decisions of the Comptroller General are instructive in the area of bid protests."  *Centech*, 554 F.3d at 1038 n.4; *see also Planning Research Corp. v. United States*, 971 F.2d 736, 740 (Fed. Cir. 1992) (stating that "[l]egal interpretations by tribunals having expertise are helpful, even though not compelling").

In contrast, where a timely submitted proposal is not complete, the GAO typically has rejected the proposal.  *E.g.*, *Inland Serv. Corp.*, B-252947, 93-2 CPD ¶ 266 (Comp. Gen. Nov. 4, 1993) (finding that where a solicitation required an offeror to submit both a technical proposal and price proposal to two different agency offices, timely submission of only the technical proposal to one office could not excuse the late delivery of the technical proposal and price proposal to the other office); *see also KSEND v. United States*, 69 Fed. Cl. 103, 117 (2005), *aff'd per curiam*, 184 Fed. Appx. 965 (Fed. Cir. 2006) (finding that where the solicitation clearly required bidders to submit overhead transparencies for a presentation, the agency properly rejected as non-responsive a bid that did not include transparencies).

Here, EOR timely submitted a complete copy of its proposal via email.  EOR also submitted paper and CD copies of the proposal, as required by the RFP, but it delivered the copies late.  DIA may waive the failure to timely submit the proper number of copies of the proposal but only if EOR did not gain a competitive advantage by the late submission of the copies.  While the emailed proposal guarantees that EOR did not incorporate post-deadline information in its paper proposal, consideration of EOR's proposal will not be proper unless the facts show that EOR did not take extra time to complete its proposal than other offerors.  As discussed, the Court finds that EOR did not obtain a competitive advantage by taking more time to complete its paper proposal than other offerors because EOR's paper proposal and its courier arrived at JBAB's security gate 35 minutes prior to the submission deadline.  EOR's paper proposal was late because its courier experienced an unexpected delay at JBAB's security gate.

The record shows that EOR gained no advantage by the late delivery of its paper proposal.  This was not a case where EOR did not allow sufficient time to make the delivery or where EOR was trying to make last minute changes to its paper proposal.  Therefore, the Court finds that EOR gained no advantage from the late delivery of the paper proposal and other offerors would not be prejudiced by the consideration of EOR's proposal.  Consequently, the late submission of the paper proposal is a waivable minor informality.  The Court finds that consideration of EOR's proposal would further the competitive process and that there is no basis for concluding that consideration of EOR's proposal would be unfair to other offerors.

The Court does not, however, agree with EOR that DIA should consider the emailed copy, which was the timely submitted copy, as the proposal of record.  By treating the timely submitted emailed proposal as the proposal of record, instead of the untimely paper copy, EOR would gain a competitive advantage over other offerors.  The RFP provides that the paper copy will govern any inconsistencies between the paper and electronic proposals.  All other offerors are bound by this provision.  The process of printing, collating, and preparing a paper proposal takes time, and it must be started in advance of the deadline.  All other offerors had to stop working on their proposals[13] ahead of the submission deadline to allow time to print and prepare the proposal and physically deliver the proposals as well.  Electronic proposals submitted by email are not bound by the same constraints: electronic proposals do not need to be physically printed and email essentially is delivered instantaneously.

---

[13] Although after printing their proposals, other offerors could have resumed working on their electronic proposals.

By treating EOR's emailed proposal as the proposal of record, EOR would have more time to work on its proposal than other offerors.  While other offerors will be evaluated based on their paper proposals, which had to be finished much earlier to allow time to deliver them, EOR was able to continue working on its electronic proposal before sending it via email.[14]  In sum, while under applicable law it is unreasonable to exclude EOR's proposal from consideration under the circumstances of this case where EOR will not gain an advantage, it does not follow from this determination that EOR may avoid the application of the printed copy priority provision of the RFP to the disadvantage of its competitors.

Accordingly, the Court finds that DIA's determination to exclude EOR's proposal from consideration was contrary to law and that EOR has shown "a clear and prejudicial violation of applicable statutes or regulations."  *Impresa*, 238 F.3d at 1332-33 (quotation omitted).  The Court declines, however, to order the Government to consider the emailed copy as the controlling copy of EOR's proposal.

### D.     Prejudice and Injunctive Relief

If a court concludes on the merits that an agency's decision was arbitrary and capricious or in violation of the law, the court proceeds to determine if the plaintiff is prejudiced by the agency's action.  *Bannum*, 404 F.3d at 1351.  In a pre-award bid protest, such as this case, this Court has adopted the *Weeks Marine* standard for prejudice on the merits.  *See Jacobs Tech., Inc. v. United States*, 100 Fed. Cl. 198, 207 (2011) (merits decision).  Under *Weeks Marine*, the bid protestor must demonstrate a "non-trivial competitive injury which can be addressed by judicial relief."  575 F.3d at 1362.

The Court finds that EOR has established that it is prejudiced by the rejection of its proposal as late.  EOR submitted a responsive proposal and DIA could have accepted EOR's proposal as a valid contract.  Although EOR was not guaranteed an award of the contract, rejection of its proposal denies it the opportunity to compete and any chance of receiving the award.  The wholesale rejection from consideration is not a trivial injury.

Having determined that EOR is prejudiced by the rejection of its proposal, the Court now addresses whether EOR is entitled to a permanent injunction.  Because EOR was successful on the merits, the Court weighs the plaintiff's irreparable harm if injunctive relief is withheld, the balance of hardships to the parties, and the public interest in granting injunctive relief.  *Centech*, 554 F.3d at 1037; *see also PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed Cir. 2004).

The Court finds that the evidence weighs in favor of granting the injunction.  The first factor is irreparable harm.  As this is a pre-award protest, the extent of EOR's direct economic harm will be less than in the post-award context because DIA has not yet evaluated the proposals.  Moreover, the RFP is for an IDIQ contract, so the exact value of the contract is not

---

[14] The Court notes that the minor informality rule will not excuse the late delivery of a paper proposal where an offeror submits an electronic proposal by email just prior to the deadline but leaves the task of preparing and delivering the paper proposal until after the deadline has passed.

known.  The Court therefore concludes that a determination of irreparable harm cannot be made on EOR's economic loss alone.  The real harm suffered by EOR is the denial of the opportunity to compete for a contract with a 5-year lifespan and up to $5.6 billion in revenue.  AR 339.  Absent injunctive relief, EOR will never have the opportunity to compete for the award.  Given the substantial size of the contract and the business-expanding opportunity it represents for a small business like EOR, recoupment of bid preparation costs while denying EOR the chance to compete, is not an adequate remedy.  The Court agrees with other CFC judges that have considered the issue that the denial of the opportunity to compete for a contract can constitute irreparable harm.  *E.g.*, *NetStar-1 Gov't Consulting v. United States*, 101 Fed. Cl. 511, 530 (2011).  The Court finds that EOR has established that it will suffer irreparable harm if it is denied the opportunity to compete for the Procurement.

The second factor is the balance of hardships to the parties.  The Government suffers little hardship by evaluating EOR's proposal.  DIA must evaluate 28 proposals and it will suffer little by evaluating a 29th.  DIA has not made an award, and it is not being instructed to change its final procurement decision, significantly alter its evaluation process, nor reevaluate or resolicit the contract.  Turning to the third factor, the public interest is served by maintaining the integrity of the procurement system and making sure procurements are conducted fairly and to maximize competition.  Absent injunctive relief in case like this, an agency would have no incentive to comply with the procurement regulations because a court could not remedy an unlawful determination regarding timeliness.  An agency's timeliness determination, in effect, would be unreviewable.  Furthermore, if EOR's proposal offers the best value, the public has an interest in seeing that DIA selects the most advantageous contract and that taxpayer dollars are wisely spent.

Accordingly, the Court finds that EOR has established that it is entitled to injunctive relief and that DIA must consider its proposal as timely submitted.

## IV.  Conclusion

For the reasons set forth above, Plaintiff has demonstrated that DIA's decision was arbitrary, capricious, an abuse of discretion, or in violation of procurement law and that Plaintiff is entitled to a permanent injunction.  Accordingly, Plaintiff's Motion for Judgment on the Administrative Record is **GRANTED** and the Government's Cross-Motion for Judgment on the Administrative Record is **DENIED**.

Accordingly, the agency shall reinstate EOR's proposal as eligible for consideration for award; it shall evaluate the proposal in the same manner as all the other timely filed proposals; and it shall not make an award on the SIA II Procurement without first considering EOR's proposal.  The Court directs the Clerk of the Court to enter judgment accordingly.

s/ Edward J. Damich
EDWARD J. DAMICH
Judge